### The PEOPLE of the State of Colorado, Complainant,

v.

### Christopher ALSTER, Respondent.

### No. 07PDJ056.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 12, 2009.

*REPORT, DECISION, AND ORDER IM-*
*POSING SANCTIONS PURSUANT*
*TO C.R.C.P. 251.19(c)*

### I. ISSUE

Respondent placed personal funds into a COLTAF account and thereafter used it as a personal business account to hide personal assets from his creditors. He also failed to provide mitigating evidence or otherwise participate in these proceedings. When an attorney violates a duty owed as a professional and then engages in conduct involving dishonesty, fraud, deceit or misrepresentation, the presumptive sanction ranges from public censure to suspension. What is the appropriate sanction for Respondent's misconduct? *SANCTION IMPOSED:* **ATTORNEY SUS-PENDED FROM THE PRACTICE OF LAW FOR NINETY (90) DAYS WITH CONDITIONS OF REINSTATEMENT.**

### II. PROCEDURAL BACKGROUND AND FINDINGS OF FACT

 The People filed their complaint in this matter on September 13, 2007. Respondent failed to answer the complaint or otherwise participate in these proceedings and the Court granted "Complainant's Motion for Default" on September 9, 2008. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

 The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaint.[2] Respondent took and subscribed the oath of admission and gained admission to the Bar of the Colorado Supreme Court on May 17, 1982. He is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 11884, and is therefore subject to the jurisdiction of the Court.

On November 3, 2006, Bank of the West reported that item number 13046 in the amount of $3,025.00 had been returned due to non-sufficient funds in Respondent's COL-TAF account. This notification triggered an investigation by the People. On November 14, 2006, an investigator for the People wrote Respondent and requested certain documentation and an explanation for the overdraft. The investigator sent a second letter on December 1, 2006. Respondent failed to respond to either letter.

On December 12, 2006, Chief Deputy Regulation Counsel Nancy L. Cohen wrote to Respondent and directed him to file a response to the investigation within twenty days. This time, Respondent contacted counsel for the People and requested an extension of time to respond to the investigation. He later faxed a partial response to the investigation, which included a few bank statements and a written explanation, on January 16, 2007.

In his written explanation, Respondent stated that he had received a $35,000.00 deposit at the end of July 2006 representing his earned fees on a real estate transaction. Respondent also stated that he was "forced" to pay personal bills from the account due to a medical condition and an inability to leave his home. Item number 13046 had been written to Countrywide Home Loans, Respondent's personal mortgage holder. Counsel for the People again attempted to contact Respondent via telephone on multiple occasions and left several messages. Respondent failed to respond to these messages.

On March 29, 2007, Bank of the West reported that item number 13107 in the amount of $2500.00 had been returned due to non-sufficient funds in Respondent's COL-TAF account. It was returned a second time on April 4, 2007. These notifications triggered additional investigations by the People.

In early May, Respondent contacted counsel for the People regarding these investigations. During the call, Respondent admitted that he never answered the phone number he had provided to the Office of Attorney Registration because it frequently rang with calls from creditors. Respondent advised the People that he would not update his registered phone number to the phone he actually

---

1. *See People v. Richards,* 748 P.2d 341, 346 (Colo. 1987).

2. *See* the People's complaint in 07PDJ056.

answered because his creditors would eventually discover the new number.

On June 25, 2007, Respondent sent the People original documentation related to his COLTAF account. Respondent provided no additional written correspondence with the documents. On June 26, 2007, the People's investigator spoke with Respondent via telephone at his home. Respondent stated the following:

a. He did not have the checks written against his COLTAF account between July 2006 and November 2006. All checks had been written to pay personal bills such as car insurance, firewood, and his second mortgage.

b. A $35,000.00 wire received into the COLTAF account was a broker fee for a real estate transaction. A $26,000.00 wire received into the COLTAF account was a personal loan. A $101,614.53 wire into the COLTAF account was proceeds from the sale of his personal property. A check he wrote in the amount of $70,000.00 was to KGCR Investments, Inc., which is his own company.

c. He had only used the COLTAF account to make personal deposits and pay personal bills. He stopped paying checks to third parties after the November 2006 overdraft and started cashing them. He continues to use the COLTAF account for this purpose. He has been having cash flow problems and his home is in foreclosure.

In sum, Respondent placed personal funds into a COLTAF account and thereafter used it as a personal business account to hide personal assets from his creditors. Based on these undisputed factual allegations, the Court found that Respondent violated Colo. RPC 1.15(f)(1) (failure to keep personal funds separate from COLTAF account) and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## III. SANCTIONS

The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose,* 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the complaint in evaluating the first three factors listed above. The Court finds that Respondent violated a duty to the public and other duties owed as a professional by failing to maintain the standards of personal integrity upon which the community relies when he placed personal funds into a COLTAF account and thereafter used it as a personal business account to hide personal assets from his creditors.

The entry of default established the alleged rule violations. Based on the established facts, the Court finds that Respondent *at least negligently* violated Colo. RPC 1.15(f)(1) when he placed personal funds into a COLTAF account and thereafter used it as a personal business account, and that he *at least knowingly* violated Colo. RPC 8.4(c) when he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by using the COLTAF account to hide personal assets from his creditors.[3] Respondent caused actual and potential harm to the legal system because his misuse of the COLTAF account breached the trust placed in the Colorado Supreme Court and the legal system by the state's banking industry. Respondent also caused actual and potential harm to the public because hiding his personal assets violates the standard of personal integrity upon which it expects lawyers to maintain.

---

**3.** The People did not allege in their complaint nor do Colo. RPC 1.15(f)(1) or Colo. RPC 8.4(c) require proof of a specific mental state to find a rule violation.

■ The Court finds several aggravating factors exist in this case including a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.[4] Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent failed to participate in these proceedings and therefore presented no evidence in mitigation. However, the People acknowledge Respondent has no prior disciplinary record.[5]

■ The ABA *Standards* state that the presumptive sanction for the misconduct evidenced by the admitted facts and rule violations in this case ranges from reprimand to suspension.[6] With regard to Respondent's misuse of the COLTAF account by placing personal funds in it and using it as a personal business account, suspension is generally appropriate when a lawyer *knowingly* engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.[7] Public censure is generally appropriate when a lawyer *negligently* engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.[8]

■ With regard to Respondent's use of the COLTAF account to hide personal assets from his creditors, public censure is generally appropriate when a lawyer *knowingly* engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.[9] The People nevertheless point to these standards and the case law from other jurisdictions set forth below in requesting a one-year and one day suspension.

Colorado Supreme Court case law applying the ABA *Standards* does not specifically address the issue of misuse of a COLTAF account, absent commingling or intentional fraud upon creditors. The People therefore cite cases from other jurisdictions in support of their request for a one-year and one day suspension. *See e.g. In the Matter of Disciplinary Proceedings Against Thibodeau*, 305 Wis.2d 21, 738 N.W.2d 558 (2007) (Court concluded attorney's placement of personal funds into his COLTAF account to shield funds from personal creditors violated Wisconsin's version of model rules 8.4(c) and 1.15, resulting in 60-day suspension); *In re Disciplinary Action Against Overboe*, 745 N.W.2d 852 (Minn.2008) (Attorney violated multiple rules, including Minnesota's version of model rule 8.4(c) by deceptively labeling a personal account that contained only attorney's funds as a trust account in order to shield his funds from judgment creditors, contributing to his one-year suspension).

The record clearly demonstrates that Respondent placed personal funds into a COLTAF account and used it as a personal business account to hide personal assets from his creditors. The ABA *Standards* and case law from other jurisdictions cited by the People each seem to support a suspension of less than one year and one day. The Court concludes that the particular facts and circumstances of this case warrant a short suspension with conditions of reinstatement.

## IV. CONCLUSION

■ One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, while not conclusively revealing a serious danger to the public, still warrant discipline because they adversely reflect on Respondent's fitness to

---

4. *See* ABA *Standards* 9.22(c), (d) and (i).

5. *See* ABA *Standards* 9.32(a).

6. The ABA *Standards* "Cross–Reference Table" directs the Court to consider ABA Standard 4.1 in considering the appropriate sanction when a respondent violates Colo. RPC 1.15. However, the Court finds ABA *Standards* 7.2 and 7.3 more applicable to this case, because Respondent vio-

lated a rule (Colo. RPC 1.15(f)(1)) defining a certain standard of conduct rather than a rule fundamental to his professional relationship with a client.

7. *See* ABA *Standard* 7.2.

8. *See* ABA *Standard* 7.3.

9. *See* ABA Standard 5.13.

practice law. Absent other factors in mitigation not presented here, the ABA *Standards* and case law applying the ABA *Standards* both support a suspension. Upon consideration of the nature of Respondent's misconduct, his mental state, the actual and potential harm, and the aggravating factors, the Court concludes that a ninety-day suspension with conditions of reinstatement is appropriate in this case.

## V. *ORDER*

1. The Court **SUSPENDS** Christopher Alster, Attorney Registration No. 11884, from the practice of law for a period of **NINETY (90) DAYS,** effective **Monday, April 13, 2009.**

2. Respondent **SHALL** attend and successfully complete the one-day ethics school and the one-half-day trust account school sponsored by the People as a condition precedent to filing any petition for reinstatement.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.